**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE WOLK LAW FIRM a/k/a** | : | **CIVIL ACTION** |
| **Arthur Alan Wolk Associates** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA** | : | |
| **NATIONAL TRANSPORTATION** | : | |
| **SAFETY BOARD** | : | **NO. 19-1401** |

<u>**MEMORANDUM OPINION**</u>

**Savage, J.**                                          **July 22, 2021**

In this action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the Wolk Law Firm ("Wolk") seeks records it requested from the National Transportation Safety Board ("NTSB") relating to twelve aircraft accident investigations. Wolk represents the estates and families of individuals involved in these accidents. The NTSB produced records in response to Wolk's requests as to each of these accidents and withheld others under certain FOIA exemptions. Of the twelve aircraft accidents, only six remain at issue.

The NTSB moves for summary judgment, arguing it satisfied its obligations under FOIA. Wolk contends the NTSB failed to respond to one accident investigation entirely and improperly withheld documents in the remaining five accidents. After review of the briefing, the NTSB's *Vaughn* Index of withheld documents, and the documents produced for *in camera* review, we conclude that the NTSB has complied with its obligations under FOIA by producing all documents not subject to an exemption.  Therefore, we shall grant the NTSB's motion for summary judgment.

## Background

### *Wolk's FOIA requests*

Between March 2016 and September 2018, the Wolk firm made FOIA requests seeking the records on twelve different aircraft accidents.[1] The NTSB initially denied the requests, Wolk appealed, and the NTSB either denied or failed to respond to the appeal within the statutory time period.[2] In three cases, after the NTSB released its factual report on the public docket, Wolk made renewed FOIA requests seeking additional documents.[3]

Dissatisfied with both the timeliness and the substance of responses to its FOIA requests, Wolk brought this action for injunctive relief against the NTSB on April 2, 2019.[4] The amended complaint outlines nineteen separate FOIA requests for records in the NTSB's investigations of the twelve aircraft accidents.[5] Wolk alleged obstruction of justice and a violation of due process, violation of 49 C.F.R. § 837.4,[6] and violation of FOIA, 5

---

[1] ECF Doc. No. 9 ¶¶ 47, 53, 59, 69, 76, 89, 95, 101, 106, 112, 117, 124. Wolk's amended complaint alleges the NTSB failed to produce records in response to twelve FOIA requests: (1) Estate of Berke Morgan Bates and Estate of Henry John Cullen, III ("Bates/Cullen"); (2) Estate of Christopher Freeman Byrd, Estate of Phillip Armstrong Byrd, and Estate of Grady G. Byrd, III; (3) Estate of Lauren Johnson Chase; (4) Arrin Farrar; (5) Estate of Troy L. Gentry; (6) York Gill; (7) Estate of William Gordon; (8) Robert and Brenda Hinkle and John Michael and Dawn Skinner ("Hinkle/Skinner"); (9) Estate of Ryan Lee McCall; (10) Dennis and Debra O'Neal; (11) Daniel Kemp Shalloway; and (12) Gregory Torres and Estates of Diana Soto, Evelyn Walker, and James Walker ("Torres"). *Id.* ¶ 138.

[2] ECF Doc. No. 9 ¶¶ 46-50, 54-55, 60-66, 70-73, 77-86, 90-91, 96-98, 102-03, 107-09, 113-14, 118-20, 125-35.

[3] ECF Doc. No. 39 at 5 (citing the Chase, Gentry, and Torres accidents).

[4] ECF Doc. Nos. 1. Wolk amended its complaint to revise the accidents for which it made FOIA requests, adding three accidents (Gill, O'Neal, and Shalloway) and removing one other accident (Stubbs). ECF Doc. No. 9.

[5] In its response to the NTSB's motion for summary judgment, Wolk disputes only the Bates/Cullen; Chase; Gentry; Gordon; O'Neal; and Shalloway requests.

[6] 49 C.F.R. §§ 837.1 through 837.4 sets out the procedure "when requesting material for use in legal proceedings (including administrative proceedings) in which the National Transportation Safety Board (NTSB or Board) is not a party . . .." *Id.* § 837.1.

2

U.S.C. § 552, for failure to provide records in response to its FOIA requests.[7] We granted the NTSB's motion to dismiss Wolk's claims for obstruction of justice, violation of due process and a violation of 49 C.F.R. § 837.4, leaving only Wolk's FOIA claim.[8]

The NTSB moved to stay the case through April 2020.[9] It explained it receives hundreds of FOIA requests each year and, in an effort to diligently process pending requests, uses a multi-track, first-in, first-out system. Because of the backlog, the NTSB sought a stay to allow it sufficient time to complete the processing of Wolk's requests on a rolling basis without disturbing the first-in, first-out system. FOIA allows the NTSB additional time to respond to requests beyond the required twenty business days if it can show exceptional circumstances and that it is exercising due diligence. 5 U.S.C. §§ 552(a)(6)(A)(i), (C)(i).  We granted the motion and required the NTSB to file status reports every sixty days regarding Wolk's FOIA requests and to advise us within ten days of final processing of the requests.[10]

On May 4, 2020, the NTSB advised it had responded to all of Wolk's FOIA requests with the exception of the Bates/Cullen accident.[11] Upon Wolk's unopposed motion, we

---

[7] ECF Doc. No. 9.

[8] ECF Doc. No. 22.

[9] Under FOIA, 49 U.S.C. § 552(a)(6)(C)(i), "[I]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records. Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request. Any notification of denial of any request for records under this subsection shall set forth the names and titles or positions of each person responsible for the denial of such request."

[10] ECF Doc. No. 24.

[11] ECF Doc. No. 28. As discussed below, the NTSB did not produce records relating to the Bates/Cullen accident, advising us in its May 4, 2020, status report it administratively closed the

lifted the stay.[12] Since then, the NTSB asserts it has produced, on a rolling basis, additional records in response to Wolk's FOIA requests.[13]

*The NTSB's motion for summary judgment*

Moving for summary judgment, the NTSB contends it complied with its obligations under FOIA by responding to all of Wolk's FOIA requests that remained administratively open.[14] It maintains it properly withheld or redacted some documents under FOIA's exemptions.

In support of its motion, the NTSB submitted the declaration of Timothy LeBaron, Deputy Director for Regional Operations in the Office of Aviation Safety at the NTSB.[15] The declaration describes: the background of NTSB investigations and assistance it receives from other organizations and government agencies in determining the cause of civil aviation accidents in the United States as well as other modes of transportation; investigative activities conducted on-scene; investigative activities after the on-scene phase; the parties' participation in the NTSB's deliberative process and decision making;

---

Bates/Cullen FOIA request because "the investigation remains pending" and it "cannot estimate when that investigation will be complete." *Id.* at 3.

[12] ECF Doc. No. 31.

[13] ECF Doc. No. 33 at 7. Wolk does not dispute the NTSB's assertion of a continued, rolling production of records.

[14] ECF Doc. No. 33. FOIA cases are appropriately decided on motions for summary judgment. *Beltranena v. United States Dep't of State*, 821 F.Supp.2d 167, 175 (D.D.C. 2011) (citing *Defenders of Wildlife v. United States Border Patrol*, 623 F.Supp.2d 83, 87 (D.D.C. 2009)). Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[15] ECF Doc. No. 33-2.

4

and the specific accidents at issue here including the date the NTSB published its final report for each of the accidents.[16]

Mr. LeBaron explains the information produced by the NTSB appears in a public docket required by federal regulation.[17] The public docket includes NTSB investigators' factual reports, transcripts of interviews and hearings, relevant correspondence, supporting documents, photographs, and videos.[18] In aviation accidents, the NTSB publishes its preliminary and final accident reports, called the "probable cause finding," in the Aviation Accident Database on the NTSB website.[19] The NTSB does not place on the public docket medical records or other records with privacy concerns, including accident scene photographs with human remains.[20] It does not include confidential or commercially sensitive information. Nor does it disclose deliberative process information.[21]

As Mr. LeBaron outlines, the NTSB in its fact-finding investigation process utilizes other organizations and government agencies to assist in its investigations of aviation

---

[16] *Id.*

[17] *Id.* ¶ 6. "Public docket" is defined as "a collection of records from an accident investigation that the agency deemed pertinent to the investigation." 49 C.F.R. § 801.3. "Upon completion of an accident investigation, the NTSB will compile a public docket containing investigators' factual reports, and documents and exhibits that the agency deemed pertinent to the investigation." 49 C.F.R. § 801.30. The public docket is available on the NTSB's website and available for public inspection and copying in the NTSB's public reference room. *Id.* § 845.31.

[18] ECF Doc. No. 33-2 ¶ 6.

[19] *Id.*

[20] *Id.* ¶ 7.

[21] *Id.*

accidents.[22] In each investigation, the NTSB Investigator-in-Charge may designate "one or more entities to serve as parties in an investigation." 49 C.F.R. § 831.11.[23] A party participant is subject to the control and direction of the Investigator-in-Charge and bound by the terms of certification designed to ensure the parties serve the needs of the NTSB investigation and not for any litigation purpose.[24]

Opposing the NTSB's motion, Wolk argues the NTSB failed to address the Bates/Cullen request entirely and failed to meet its burden to justify withholding documents under FOIA exemptions.[25] Wolk requested that we either order production of the records withheld by the NTSB or conduct an *in camera* review of the disputed records.

Wolk argues that the NTSB failed to produce records within twenty days as required by FOIA and objects to its "first-in, first-out" method for processing FOIA requests. 5 U.S.C. § 552(a)(6)(A)(i).  Wolk also continues to argue the NTSB's actions violate the civil rights of the accident victims and families it represents. Having dismissed Wolk's due process argument, we do not reconsider it now.

Wolk argues we should deny summary judgment because the NTSB failed to respond to the Bates/Cullen FOIA request and the NTSB improperly withheld records in the remaining disputed cases. Wolk concedes the NTSB produced some documents in

---

[22] *Id.* ¶ 9.

[23] "Party status is limited to those persons, Federal, state, or local government agencies and organizations whose employees, functions, activities, or products were involved in the accident and that can provide suitable qualified technical personnel to actively assist in an investigation." 49 C.F.R. § 831.11(a)(1).

[24] ECF Doc. No. 33 at 20; ECF Doc. No. 33-2, ¶¶ 9-13, LeBaron Declaration.

[25] ECF Doc. No. 34.

response to its FOIA requests, but claims it improperly withheld records in "several instances."

In its counterstatement of facts, Wolk expresses general discontent with the NTSB. It submits an undated verification of the Wolk firm's founding attorney, Arthur Alan Wolk, who describes his history of disputes with the NTSB since the 1980s.[26] The final paragraph of Attorney Wolk's verification asserts: "There is no justification that the NTSB has shown to prevent this Court from ordering that the NTSB's investigation file must be made available regardless of whether the NTSB Factual Report is completed and no Party to the investigation should be prevented from participating in litigation to the extent Court rules permit."[27]

The issue on summary judgment is not whether the NTSB should produce its investigation file before its factual report is completed or whether a "party" to the investigation should be "prevented from participating in litigation." The issue is whether the NTSB properly withheld or redacted documents under FOIA.

The Wolk firm's prime target is the NTSB's "party participant" system. It argues the system creates a "conflict of interest" and gives rise to "collusion."[28] Wolk asserts these "party participants" working with the NTSB are often manufacturers of the aircraft involved in the accident.[29] He contends the reliability of the "party process" has the "potential" to compromise the investigation because the parties assisting the NTSB in the

---

[26] ECF Doc. No. 34-3.

[27] ECF Doc. No. 34-3 ¶ 25.

[28] ECF Doc. 9 ¶¶ 14-21.

[29] ECF Doc. No. 34 at 6.

investigation are likely to be named as defendants in related civil litigation.[30] This argument attacks the NTSB's "party participant process" in general and does not specifically address the accidents at issue here.

### FOIA Standards

FOIA requires federal agencies to make its records available to the public upon request. *Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011). A federal agency must disclose its documents unless they fall within one of nine enumerated exceptions. *United States Fish & Wildlife Service v. Sierra Club, Inc.*, 141 S.Ct. 777, 785 (2021) (citing 5 U.S.C. § 552(b)). Where no exemption applies, the agency must disclose the requested information. *Cozen O'Connor v. United States Dep't of Treasury*, 570 F.Supp.2d 749, 764 (E.D. Pa. 2008).

When an agency invokes an exemption, it "must provide reasonably specific information that explains how the exemption applies." *Cozen O'Connor*, 570 F. Supp. 2d at 765 (citing *Am. Friends Serv. Comm. v. Dep't of Defense*, 831 F.2d 441, 444 (3d Cir. 1987); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  An agency "must describe the material being withheld, state the justification for non-disclosure, and cite each exemption asserted."[31] The agency may satisfy the specificity requirement by producing a "*Vaughn*" index of withheld records.[32] The *Vaughn* index "must consist of one

---

[30] *Id.*

[31] *Id.*

[32] A *Vaughn* index, named after *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), "is an affidavit that supplies an index of withheld documents and details the agency's justification for claiming an exemption." *Leonard v. United States Dep't. of Treasury I.R.S.*, 590 F. App'x 141, 143, n.3 (3d Cir. 2014) (citing *Patterson v. Fed. Bureau of Investigation*, 893 F.2d 595, 599 n. 7 (3d Cir. 1990)); *Wadhwa v. Sec'y United States Dep't of Veterans Affairs*, 707 F. App'x 61, 65 (3d Cir. 2017) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 644 F.2d 969, 984 (3d Cir. 1981)).

comprehensive document, adequately describe each withheld document or redaction, state the exemption claimed, and explain why each exemption applies." *Manatt*, 473 F. Supp. 3d at 418 (quoting *Cozen O'Connor*, 570 F. Supp. 2d at 765).

If the *Vaughn* index meets the specificity requirement and demonstrates "a logical connection between the information and the claimed exemption" that is not controverted by contrary evidence, the agency is entitled to summary judgment. *Am. Friends Serv. Comm.*, 831 F.2d at 444 (quoting *Abbotts v. Nuclear Regulatory Comm'n*, 766 F.2d 604, 606 (D.C. Cir. 1985)) (internal citation omitted). The burden remains on the NTSB as the moving party to demonstrate there is no genuine issue of material fact and its justification for invoking a FOIA exemption is logical or plausible. *Judicial Watch, Inc. v. United States Dep't of Justice*, 20 F.Supp. 3d 260, 268 (D.D.C. 2014) (quoting *Celetex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Am. Civil Liberties Union v. United States Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

If a *Vaughn* index does not describe withheld records with sufficient detail, we may order the agency to submit the documents for *in camera* review. *Id.* (citing *Wolk*, 392 F. Supp. 3d at 520; *Cozen O'Connor*, 570 F. Supp. 2d at 765).  There is "no set formula for a *Vaughn* [i]ndex" and "district courts have broad discretion to decide if an *in camera* review is necessary." *Wadhwa*, 707 F. App'x at 65 (quoting *Hinton v. Dep't of Justice*, 844 F.2d 126, 129 (3d Cir. 1988) and *Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008)).

### The NTSB's Claimed Exemptions

The NTSB withheld requested records under three exemptions: Exemption 4, protecting privileged or confidential trade secrets and commercial or financial information;

Exemption 5, protecting documents under the attorney-client, attorney work-product, and deliberative process privileges; and, Exemption 6, protecting personnel, medical, and similar files the disclosure of which would constitute an unwarranted invasion of personal privacy. [33] 5 U.S.C. § 552(b)(4), (5), and (6).

To support its claimed exemptions, the NTSB submitted a sixty-page *Vaughn* index for the remaining disputed accident investigations.[34] After reviewing the *Vaughn* index, Wolk disputes only a portion of the withheld documents based on Exemption 5 in the Chase, Gentry, Gordon, O'Neal, and Shalloway accidents and Exemption 6 in the Chase, Gentry, and Shalloway accidents.[35]

Wolk argues we must deny summary judgment for two reasons: (1) the *Vaughn* index fails as a matter of law because it does not sufficiently describe the logical connection between the information and the claimed exemption; and, (2) the NTSB failed to meet its burden of showing Exemptions 5 and 6 apply.[36]

### The *Vaughn* index is sufficient

---

[33] Wolk reviewed the NTSB's *Vaughn* index and "pared down the matters in dispute." ECF Doc. No. 34 at 6-7. It submitted the Affidavit of Cynthia M. Devers, an attorney with the Wolk firm, attaching a chart of the firm's remaining objections. ECF Doc. No. 34-2. The chart identifies disputed documents withheld under Exemptions 5 and 6 only. *Id.* The chart does not identify disputed documents withheld under Exemption 4, which protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential." Thus, we assume Wolk has abandoned its objections to documents withheld under that exemption.

[34] ECF Doc. No. 33-1.

[35] ECF Doc. No. 34-2.

[36] Wolk also argues we must deny summary judgment because the NTSB's "first-in, first-out" process violates FOIA and the accident victims' constitutional rights have been violated. As explained, we mooted Wolk's "first-in, first-out" objection by granting the NTSB's motion for stay and dismissed Wolk's due process argument.

Wolk asks us to strike the NTSB's claimed exemptions, and either order production of the withheld records or conduct an *in camera* review of the disputed documents because the *Vaughn* index is insufficient.[37] Wolk contends the *Vaughn* index fails to sufficiently describe the connection between the information withheld and the claimed exemption. Wolk does not provide us with an example of a deficient description in the *Vaughn* index or otherwise explain how the index is deficient. Wolk appears to argue the entire sixty-page index is deficient.

A *Vaughn* index need only provide sufficient information for the party requesting information and the trial court to derive from it "a clear explanation of why each document or portion of document is withheld" under a claimed exemption. *Hinton*, 844 F.2d at 129. The *Vaughn* index here identifies, for each accident, the page or pages withheld or redacted, the description and date of each document, the information redacted or withheld, and the claimed exemption and basis for it.[38]

After reviewing the *Vaughn* index, we requested *in camera* review of a single document because we were unable to derive from the index "a clear explanation of why each document or portion of document is withheld" under the claimed exemption.[39]

### Review of Claimed Exemptions 5 and 6

The NTSB's decision to withhold documents is reviewed *de novo* and the burden is on the NTSB to prove it properly withheld the records. 5 U.S.C. § 552(a)(4)(B). We construe the claimed exemptions narrowly given the strong presumption in favor of

---

[37] ECF Doc. No. 34 at 12-13.

[38] ECF Doc. No. 33-1.

[39] Wolk must have found the *Vaughn* index sufficient. After reviewing it, Wolk pared down its objections to the documents withheld or redacted by the NTSB.

disclosure under FOIA.  *Milner v. Dep't of Navy*, 562 U.S. 562, 571 (2011). To overcome summary judgment, Wolk must come forward with specific facts demonstrating a genuine issue regarding whether the NTSB improperly withheld records.  *Cox v. Dep't of the Treasury*, No. 20-631, 2021 WL 1268384, at *3 (D.D.C. Apr. 6, 2021) (quoting *Span v. United States Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010)).

*Exemption 5: Privileged documents*

The NTSB withheld requested records under Exemption 5, which protects inter-agency or intra-agency communications that are not available by law to a party other than an agency in litigation with the agency.  5 U.S.C. § 552(b)(5). This includes the communications protected by the deliberative process, attorney-client and attorney work product privileges. However, the deliberative process privilege shall not apply to records created twenty-five years or more before the request.  *Id. See Sierra Club*, 141 S.Ct. at 785 (citing *Dep't of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8 (2001)).

The NTSB asserts the deliberative process, attorney-client, and attorney work-product privileges over the withheld documents. It also asserts that information submitted by a "party representative" assisting in an investigation qualifies as intra-agency records protected under these privileges.[40]

a. The deliberative process privilege

The deliberative process privilege "shields from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *Sierra Club*, 141 S.Ct. at

---

[40] ECF Doc. No. 33 at 16-20.

785 (quoting *Sears, Roebuck & Co.*, 421 U.S. at 150). The deliberative process privilege applies only to "predecisional, deliberative documents." It does not cover documents reflecting a final agency decision and the reasons supporting it. *Id.* at 785-86 (citing *Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 186 (1975)). Predecisional documents are those generated before the agency's final decision on the matter. *Id.* at 786 (citing *Sears, Roebuck & Co.*, 421 U.S. at 150-52; *Grumman*, 421 U.S. at 184-86). Deliberative documents are those prepared to assist the agency in reaching its decision. *Id.* Predecisional and deliberative documents overlap because a document cannot be deliberative unless it is predecisional. *Id.*

The NTSB asserts the deliberative process privilege over the withheld or redacted records because: (1) they are predecisional and deliberative; (2) the privilege is not limited to records related to a policy decision, and protects records reflecting its "consultative process" regardless of whether the records contain recommendations regarding law and policy; and (3) the privilege protects factual material where disclosure of purely factual material may expose its deliberative process.[41] It contends its *Vaughn* index provides detailed descriptions of the withheld records of its accident investigations, including notes, calculations, accident summaries, draft reports, communications, analyses, and memoranda.[42] The NTSB asserts these documents are both "predecisional" and "deliberative" because they reflect input on draft reports and preliminary information on possible causes of the accidents; the potential relevance of certain information to the

---

[41] ECF Doc. No. 33 at 25-30.

[42] *Id.* at 24.

agency; how the NTSB may have used information during its investigations; investigation strategies; and its investigators' thought processes.[43]

To determine whether a document "communicates the agency's settled position," we must consider whether the agency treats it as "its final view on the matter." *Sierra Club*, 141 S.Ct. at 786 (citing *Sears, Roebuck & Co.*, 421 U.S. at 150). It does so by communicating that "the document reflects the 'consummation' of the agency's decision making process and not a 'merely tentative' position." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *Grumman*, 421 U.S. at 189-90, and n. 26) (internal quotations omitted). Documents leaving agency decisionmakers "free to change their minds" do not reflect a final decision. *Id.* (quoting *Grumman*, 421 U.S. at 189-90, and n. 26). Thus, documents generated while the agency still has the matter under consideration and before it makes a final decision are part of the predecisional, deliberative process and are protected.

The NTSB argues the documents it withheld are deliberative because they reflect the "give-and-take of the consultative process." *Judicial Watch, Inc. v. United States Dep't of Defense*, 847 F.3d 735, 739 (D.C. Cir. 2017). Wolk responds that the withheld materials are not deliberative because they are unrelated to any NTSB policy decision.[44] Judge Robreno rejected the same argument Wolk made in 2019 litigation against the NTSB. *Wolk*, 392 F. Supp. 3d at 526. Judge Robreno reasoned both the District of Columbia Circuit Court of Appeals and the Ninth Circuit Court of Appeals have held the privilege applies to decisions that are not formal agency policy and particularly to

---

[43] *Id.*

[44] ECF Doc. No. 34 at 13.

investigations of aircraft accidents.  *Id.* (citing *Badhwar v. United States Dep't of Air Force*, 829 F.2d 182, 183, 184-85 (D.C. Cir. 1987) and *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 982-84 (9th Cir. 2009)).

Wolk also argues the deliberative process privilege does not apply because the withheld or redacted documents contain factual information. Purely factual material usually cannot be withheld "unless it reflects an 'exercise of discretion and judgment calls.'" *Ancient Coin Collectors Guild v. United States Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (quoting *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1539 (D.C. Cir. 1993); *Montrose Chemical Corp. of Cal. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974)). *See also*, *Wolk*, 392 F.Supp. 3d at 526 (citing the District of Columbia Court of Appeals' decision in *Mapother* holding non-disclosure under Exemption 5 was proper where a report's factual material had been "assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action.") Factual material is not protected by the privilege unless it is "inextricably intertwined with the deliberate material" such that its disclosure would reveal the agency's deliberations. *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 372 (D.C. Cir. 2005) (quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)). Disclosure of purely factual material "'may so expose the deliberative process within an agency that it must be deemed exempted' under Exemption 5." *Gellman v. Dep't of Homeland Sec.*, No. 16-635, 2021 WL 673905, at *8 (D.D.C. Feb. 2, 2021) (quoting *Mead Data Cent., Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977)). In that instance, the information is exempt because it would reveal what the agency deemed significant or insignificant in reaching its final decision. The application of

15

Exemption 5 does not turn on whether the material is purely factual in nature or whether it is already in the public domain. *Ancient Coin Collectors Guild*, 641 F.3d at 513. It turns on whether disclosure would reveal how the agency arrived at its final decision.

The remaining disputed documents withheld under Exemption 5 are the Chase, Gentry, Gordon, O'Neal, and Shalloway accidents.[45] The NTSB issued its final report in the Chase accident on April 17, 2018; in the Gentry accident, on November 5, 2018; in the Gordon accident, on November 13, 2017; in the O'Neal accident, on October 30, 2014; and in the Shalloway accident, on June 26, 2017.

With the exception of two documents in the Gentry accident, all disputed documents were generated before the NTSB's final decision. They are predecisional and deliberative protected by the privilege. *Sierra Club*, 141 S.Ct. at 785-86.

The two documents in the Gentry accident post-dating the NTSB's November 5, 2018 final report are:

- Pages B-110 to B-113: A November 14, 2018 email from NTSB Investigator-In-Charge Rayner to NTSB employee Mr. Schiada containing a draft safety accomplishment report in the body of the email and attaching a draft safety accomplishment proposal;[46] and

- Pages B-455 to B-458: A November 14, 2018 email from NTSB employee Mr. Schiada to NTSB employee Ms. Dunks commenting on and attaching an unsigned safety accomplishment decision memo, forwarding an email from Investigator-in-

---

[45] ECF Doc. No. 34-2 at 3.

[46] ECF Doc. No. 33-1 at 11.

Charge Rayner to an NTSB Aircraft Safety Improvements account and to Mr. Schiada, and containing the text of the decision memo in the email.[47]

By its description, the first November 14, 2018 email contained a draft and proposed safety accomplishment report. Because draft reports reflect the NTSB's preliminary view and not its final decision, the NTSB properly withheld the documents at B-110 to B-113 under Exemption 5. *Sierra Club*, 141 S.Ct. at 786.

The second November 14, 2018 email between NTSB employees contains comments on an unsigned safety accomplishment decision memo attached to the email and forwards an email from the Investigator-in-Charge containing the text of the safety accomplishment decision memo. This material does not appear to be predecisional. The email refers to a safety accomplishment decision memo. Unlike the other November 14, 2018 email referring to a draft safety accomplishment report and draft safety accomplishment proposal, the second November 14 email refers to safety accomplishment *decision*.

Because we could not determine whether the NTSB properly withheld the documents at B-455 to B-458 under Exemption 5, we ordered the NTSB to provide us with copies of these documents for *in camera* review.[48]  After reviewing these documents *in camera*, we conclude that they addressed a safety accomplishment *proposal* and not a final version of the document.  Therefore, the NTSB also properly withheld the documents under Exemption 5.

b.  Attorney-client and attorney work-product privileges

---

[47] *Id.* at 29.

[48] ECF Doc. No. 40.

The NTSB asserts the attorney-client and attorney work-product privileges over documents related to the Gentry Accident at B-1-5; 45-47, 96-97, 237; B17-18; B-92-95; B-233; B-290; B-293; B-367-368; B-389-413.[49] The documents are described as emails seeking legal advice either to or from an NTSB attorney or forwarding of an email from an NTSB attorney.

In FOIA cases, the agency is the "client" and the agency's lawyers are the "attorneys" for the purposes of the attorney-client privilege. *Hall & Assoc. v. United States Envtl. Prot. Agency*, No. 18-1749, 2021 WL 1226668, at *5 (D.D.C. Mar. 21, 2021) (citing *In re Lindsey*, 148 F.3d 1100, 1105 (D.C. Cir. 1998)). To satisfy its burden, the NTSB must show the documents withheld (1) involve confidential communications between an attorney and the client and (2) relate to a legal matter for which the client has sought professional advice. *Judicial Watch, Inc. v. United States Dep't of Treasury*, 802 F.Supp.2d 185, 200 (D.D.C. 2011) (quoting *Wilderness Soc'y v. U.S. Dep't of the Interior*, 344 F.Supp.2d 1, 16 (D.D.C. 2004)).

Wolk does not contest the NSTB's assertion of attorney-client and attorney work-product privileges. Wolk's response brief disputes the application of the deliberative process privilege only and does not address the attorney-client or attorney-work product privileges.[50] But, the NTSB raises both the attorney-client privilege and the deliberative process privilege for certain documents. For example, the NTSB in the Gentry accident withheld pages B-92 to B-95 and B-233, August 9 and August 16, 2018 emails between the NTSB's Inspector-in-Charge to an NTSB attorney seeking legal advice regarding an

---

[49] ECF Doc. No. 34-2 at 1-10.

[50] ECF Doc. No. 34 at 13-14.

excerpt of a handbook of maintenance instructions containing proprietary information.[51] The NTSB claims Exemption 5 protects the email because it discusses how the NTSB may have used the handbook excerpt as part of its investigation (deliberative process privilege) *and* is a request for legal advice (attorney-client privilege). Wolk responds that Exemption 5 does not apply because the emails contain factual material that does not reveal the deliberative process and its need for the document and fact-finding outweigh the NTSB's interest in non-disclosure.[52] At the same time, Wolk does not challenge the asserted attorney-client privilege on the emails.

The documents identified as emails to or from the NTSB's attorney at pages B-92 to B-95; B-233; B-290; B-293; B-367 to B-268; and B-389 to B-413 are protected by the attorney-client privilege and properly withheld under Exemption 5.

The email from the NTSB's attorney Mr. McKenzie and the attached Documents B-1 to B-5; B-45-47; B-96 to B-97; and B-237 were withheld.[53] The NTSB explains it withheld the email under Exemption 5 "because it discusses how the NTSB may use the handbook excerpt as part of its investigation."[54] The NTSB does not assert the attorney-client privilege over this email and attached documents. Because these documents are covered by the deliberative process privilege, they were properly withheld under Exemption 5.

---

[51] ECF Doc. No. 34-2 at 2, 5.

[52] *Id.*

[53] ECF Doc. No. 34-2 at 3.

[54] ECF Doc. No. 33-1 at 4.

*Exemption 6: Personnel, medical, and similar files entitled to protection*

The NTSB withheld materials under Exemption 6 which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  We must balance the public interest in disclosure against an individual's privacy interests to determine whether the exemption applies. *Berger v. I.R.S.*, 288 F. App'x 829, 832 (3d Cir. 2008) (citing *Sheet Metal Workers Int'l Assn., Local Union No. 19 v. United States Dep't of Veterans Affairs*, 135 F.3d 891, 897 (3d Cir. 1998)).   As we have previously explained, the focus of Exemption 6 is the individual's interest, not the government's interest. *Cozen O'Connor*, 570 F.Supp.2d at 781.  Exposing an individual's information found in personnel, medical, and similar files having no connection to the agency's decision-making or operations serves no legitimate purpose under FOIA to warrant an invasion of the individual's privacy.  *Id.*  For Exception 6 to apply, the information must be subject to privacy protection and the invasion of privacy is "clearly unwarranted."  *Wolk Law Firm*, 392 F. Supp. 3d at 527 (*quoting Int'l Bhd. of Elec. Workers Local Union No. 5 v. U.S. Dep't of Hous. & Urban Dev*., 852 F.2d 87, 89 (3d Cir. 1988), *holding modified by Sheet Metal Workers Int'l Ass'n, Local Union No. 19 v. U.S. Dep't of Veterans Affairs*, 135 F.3d 891 (3d Cir. 1998)).

Wolk only challenges the NTSB's withholding under Exemption 6 of documents, photographs, and videos of the Chase, Gentry, and Shalloway accidents. Wolk seeks accident site photos depicting mutilated human remains; autopsy and toxicology reports; police camera videos depicting the accident site, including images of victims and

describing injuries; photographs of personal items found at the accident site and redacted information revealing private information of victims such as home address, driver's license, date of birth, and credit card numbers.[55] Wolk contends these records do not compromise a substantial privacy interest, the records are relevant and necessary to the investigation of the accidents, and weigh in favor of disclosure.[56]

Judge Robreno rejected Wolk's similar challenge to NTSB aircraft accident records withheld under Exemption 6, including death scene photographs, autopsy reports, and medical case reviews, finding "the strong privacy interests of the deceased and the relatives of the deceased are not outweighed by any public interest factors which are, at most, minimal" and "[t]he documents reveal little-to-nothing at all about the agency's activities and conduct, rather the documents concern medical issues and medical opinions." *Wolk Law Firm*, 392 F. Supp. 3d at 527.

The documents are protected by Exemption 6. They are of the same nature and subject to the same overriding privacy interests in the documents Judge Robreno found were protected by Exemption 6. For the same reasons, we conclude the NTSB properly withheld the documents.

### FOIA request regarding the Bates/Cullen accident

The Wolk firm represents the estates of two men, Messers. Bates and Cullen, who died in an August 12, 2017 helicopter accident.[57] As part of the Wolk firm's investigation,

---

[55] The *Vaughn* index notes Wolk represented to the NTSB it does not object to redactions of personal information such as professional certificate numbers, home addresses, telephone numbers, dates of birth, and credit card numbers under Exemption 6. See ECF Doc. No. 33-1 at 1.

[56] ECF Doc. No. 34-2 at 21-22.

[57] ECF Doc. No. 9 ¶¶ 30, 32.

it sought the wreckage and video of the accident flight to allow the firm to inspect the wreckage with sufficient time to meet the August 12, 2019 statute of limitations.[58] It issued a FOIA request on February 11, 2019.[59]

The February 11, 2019 FOIA request sought thirteen separate categories of records, documents, and materials.[60] On March 5, 2019, the NTSB denied Wolk's FOIA request under Exemptions 5 and 7(A) of FOIA because its investigation into the accident was ongoing.[61] The NTSB administratively closed the Bates/Cullen FOIA request "due to an active investigation" and could not estimate when the investigation would be

---

[58] *Id.* ¶ 36.

[59] ECF Doc. No. 34-4 at A.14.

[60] *Id.* at A.14-A.15. Wolk requested: all original field notes of NTSB Investigators; all original photos, recordings, sketches, notes, printed material carried away by investigators, such as aircraft books, charts, checklists, or other material found at the scene; all original records, reports, dispatch, maintenance records, manuals, certificates, histories, photographs, charts or recordings, *in any format, printed, digital, microfiche or photographic*; all original interview records, before summarization or re-recording; signatory lists of all participants as Party Members to the investigation; all notes of "Parties to Investigation" to all groups, submitted in preparation of the Safety Board's "preliminary, factual, technical, teardown or laboratory reports"; any and all transcripts or records, in original form, prior to translation, or summarization or editing, obtained by the NTSB; all copies of NTSB *requests for records*, recordings or other material from other government agencies, companies or organizations associated with the investigation; all dispatch and/or maintenance control logs or records of any facility conducting maintenance, repair, overhaul or exercising flight control or testing on the accident aircraft, received by any investigator; all ATC data, Radar recording, communications transcripts, obtained or in the possession of the government; all copies of ATC communication tapes (original re-recording), tower or TRACON, or ARTCC Center; all photographs documenting the wreckage, including all components, prior to removal of these components from the wreckage; and the complete investigation file of the Investigator, Aaron McCarter, including but not limited to notes, photographs and any other materials relating to this accident. ECF Doc. No. 34-3 at A.14–A.15 (emphasis in original).

[61] ECF Doc. No. 34-3 at A.9-A.10. Exemption 7(A) withholds from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings . . . ." 5 U.S.C. § 552(b)(7).

completed.[62] The NTSB advised Wolk it could resubmit a FOIA request if it sought records that were not released on the public docket after the conclusion of the investigation.[63]

On April 2, 2019, dissatisfied with the NTSB's action, Wolk simultaneously filed an appeal of the NTSB's March 5, 2019 denial[64] and its complaint in this action.[65] The NTSB denied Wolk's appeal on May 2, 2019.[66] The NTSB explained that because the investigation was still ongoing, Exemptions 5 and 7(A) were properly invoked. It also explained FOIA does not require it to stop an investigation and review records in an ongoing investigation each time it receives a request for investigative records if doing so would impede the investigation.[67] The NTSB reminded Wolk that Exemption 5 protects preliminary records reflecting its deliberative process and not the agency's final decision. The NTSB recommended Wolk continue to monitor the public docket and access the preliminary, factual, or probable cause reports on its NTSB website from the Aviation Accident Database. It denied Wolk's appeal, recommending that Wolk resubmit its FOIA request for records relating to the accident after the conclusion of its investigation.

In the meantime, Wolk's complaint in this action alleged the NTSB failed to produce "helicopter wreckage, video of accident & documents concerning accident investigation" in violation of 49 C.F.R. § 8374.[68] Two months later, Wolk amended its complaint to add

---

[62] ECF Doc. No. 28 at 3.

[63] *Id.*

[64] ECF Doc.  No. 34-3 at A.11-A.12.

[65] ECF Doc. No. 1.

[66] ECF Doc. No. 34-4 at A.24-A.25.

[67] *Id.* at A.24.

[68] ECF Doc. No. 1 ¶ 107.

"investigation material" as requested on February 11, 2019 as improperly denied by the NTSB.[69]

A year later, on May 11, 2020, the NTSB released records relating to the Bates/Cullen accident on the public docket "contain[ing] documentation supporting the NTSB's findings and conclusions, including an Airworthiness Factual Report, an Aircraft Performance Study, and a Video Study."[70] The NTSB published its final report on the Bates/Cullen accident on July 13, 2020.[71]

Wolk did not submit additional FOIA requests after the NTSB published its final report. The NTSB points out that Wolk sought additional records **after** release of the public dockets in the Chase and Gentry accidents, but did not make an additional FOIA request in the Bates/Cullen accident.[72] The NTSB argues that because Wolk did not submit another FOIA request seeking additional documents, it is presumably satisfied with the materials made available on the public docket.  Wolk disagrees, arguing its Bates/Cullen requests are "still at issue" and it should not have to "return to the back of the line to wait once again" for records it requested in February 11, 2019.[73] Wolk does not identify which records are missing from the public docket. Nor does it identify why the records produced by the NTSB on the public docket are not responsive to its FOIA

---

[69] ECF Doc. No. 9 ¶¶ 138, 149-158. Section 837.4 prescribes the procedure for the NTSB's response to a private litigant's demand for documents. *See* 49 C.F.R. § 837.4.

[70] ECF Doc. No. 33-2 ¶ 30, LeBaron Declaration.

[71] *Id.* at ¶ 31.

[72] ECF Doc. No. 33 at 32. The NTSB cites ECF Doc. No. 17 at ¶¶ 13-22 in support of this asserted fact. We could not find support for the fact in the document as cited by the NTSB. Wolk does not contest this asserted fact.

[73] ECF Doc. No. 34 at 6 (using the pagination assigned by the CM/ECF docketing system).

request. Wolk simply argues the NTSB "failed to address"—presumably in its entirety—its February 11, 2019 FOIA request relating to the Bates/Cullen accident.

On October 10, 2019, we dismissed Wolk's claim seeking wreckage of the helicopter accident it sought under 49 C.F.R. § 837.4.[74] We first concluded the NTSB enjoys sovereign immunity on Wolk's claims for obstruction of justice and violation of due process and a violation of 49 C.F.R. § 837.4.[75] We then found its refusal to produce the cockpit videos and the wreckage was not arbitrary, capricious or an abuse of discretion.[76] Wolk continues to seek "helicopter wreckage, video of accident [and] documents concerning accident investigation"[77] Cockpit videos are statutorily exempt from production.[78] We already dismissed Wolk's claim for these materials and will not revisit the issue.

The remaining documents are broadly referred to by Wolk as "investigation material" presumably more fully identified in its February 11, 2019 FOIA request. The NTSB denied Wolk's request made during the investigation, citing Exemptions 5 and 7(A), and administratively closed its request. It denied Wolk's appeal and advised it to submit a new request after the NTSB released information on the public docket and closed its investigation.

---

[74] ECF Doc. No. 22.

[75] *Id.* at 4-5.

[76] *Id.* at 5-6.

[77] ECF Doc. No. 9 ¶ 138.

[78] ECF Doc. No. 22 at 6 (citing 49 U.S.C. § 1114(c)(1)).

Under FOIA, we have jurisdiction to enjoin the NTSB "from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  To defeat summary judgment, Wolk must show the NTSB has improperly withheld agency records.  *Citizens for Responsibility and Ethics in Washington v. United States Dep't of Labor*, 478 F. Supp. 2d 77, 80-81 (D.D.C. 2007) (citing *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)). Wolk fails to make this showing because it does not identify which documents it believes the NTSB has improperly withheld. There is no evidence the NTSB is currently withholding any documents responsive to the Wolk's February 11, 2019 FOIA request. The NTSB initially claimed Exemptions 5 and 7(a) based on an ongoing investigation and denied Wolk's appeal. The NTSB then produced documents on the public record a year later and released its final report on the Bates/Cullen accident. Wolk does not explain which requests have not been satisfied.

On summary judgment, the NTSB has the burden of demonstrating the record presents no genuine issue of material fact. The NTSB has done so here. It has produced records on the public docket and issued its final report. Wolk has not identified what documents, if any, are missing.

### Conclusion

After reviewing the *Vaughn* index and conducting *in camera* review, we find the NTSB properly withheld documents under the claimed exemptions.  Wolk's challenges are denied.  Therefore, we shall enter judgment in favor of the NTSB.